UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                      )
UNITED STATES,                        )
                                      )
     v.                               )
                                      )
DARRELL ALLEN,                        )     Criminal Action No. 06-10170-RCL
          Defendant.                  )
_____)

## ORDER ON MOTION FOR RECONSIDERATION
## OF RULING ON MOTION TO SUPPRESS

LINDSAY, DISTRICT JUDGE

Before the court is the defendant's motion for reconsideration of an order denying, without an evidentiary hearing, the defendant's motion to suppress a firearm and ammunition seized as a result of a warrantless search of a Mercedes automobile which had been driven by the defendant on May 27-28, 2005 and certain statements the defendant made during and after the allegedly illegal search and seizure (Document #32). In the motion for reconsideration, the defendant does two things: (1) he proffers an affidavit of Balgene Samuels (the "Samuels affidavit) as "new evidence" which he says was not available at the time of the original motion to suppress and (2) he calls to my attention evidence in the court's records which, he asserts, is inconsistent with the factual basis underlying my ruling on the motion to suppress.

In considering the present motion, I start with a chronology of the filings in this case. The motion to suppress was filed on November 3, 2006 (Document # 19). The motion was accompanied by a memorandum of law and an affidavit of the defendant (Document # 20). The affidavit, which, as filed, was not signed, consisted of 10 numbered paragraphs in which the defendant made four statements addressing the basis of the motion: (1) he did not grant

permission for the search of the Mercedes; (2) any statements he made were made before he was given *Miranda* warnings; (3) he made no knowing, intelligent, or voluntary waiver of his rights; and he was questioned under duress and coercion.  An original opposition was filed by the government on November 17, 2006, together with a motion of the government for leave to file a memorandum in excess of 20 pages (Document # 22).  The motion for leave to file excess pages was assented to by the defendant.  Thus, the defendant had an opportunity as early as November 17, 2006 to learn the government's position on the motion to suppress.  I denied the motion of the government for leave to file excess pages on November 21, 2006 (Docket entry November 21, 2006).  The government then filed its amended opposition on the same day, November 21, 2006 (Document # 29).  That opposition included the affidavits on which I relied in denying the motion to suppress.  Not until twenty-one days later, on December 12, 2006, did the defendant file a signed affidavit (dated December 5, 2006), setting forth his version of the facts relevant to the motion (Document # 30).  That affidavit comprised 10 numbered paragraphs, none of which addressed the assertions of the government (contained in one of the affidavits filed with the government's amended opposition) that the firearm in question had been discovered in plain view within the Mercedes by Officer James Coyne, who claimed to have been leaning over the fender and hood of the car with both feet on the ground, looking into the car with his flashlight when he made the discovery.  Nor did the affidavit take issue with the government's assertion, by way of affidavit included with its opposition, that the Mercedes was subject to an inventory search, pursuant to an appropriate impoundment by the investigating law enforcement officers.  In fact, the affidavit filed on December 12, 2006 was identical to the one filed on November 3, 2006, except that the December 12, 2006 affidavit was executed by the defendant.  On February 7,

2007, the government moved that I convene a status conference (Document # 31). The defendant filed no supplemental materials between December 12, 2006 and February 7, 2007. On February 8, 2007, I ruled on the motion to suppress (Document # 32).

The standard applicable to the determination of a motion for reconsideration is whether reconsideration is necessary "in the interests of justice." *United States v. Roberts*, 978 F.2d 17, 21 (1st Cir. 1992) ("Ordinarily, a district court faced with a motion to reconsider must apply an interests-of-justice test"). While a motion for reconsideration provides litigants with a vehicle to present the court with evidence uncovered after a ruling, it is not an occasion for party to "undo [his] own procedural failures and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the . . . court" before the court's ruling. *Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25*, 426 F.3d 416, 422 (1st Cir. 2005) (quoting *Aybar v. Crispin-Reyes*, 118 F.3d 10, 16 (1st Cir. 1997)). Thus, a court may deny a motion for reconsideration based on "new evidence" if that evidence "in the exercise of due diligence could have been presented earlier. *Emmanuel,* 426 F. 3d at 422.

The Samuels affidavit proffers evidence concerning the circumstances of the seizures in question in this case and provides background of the neighborhood in which the seizures occurred. All of this information was available to the defendant at the time the original motion to suppress was filed. The defendant himself could have provided the information in at least one of the two affidavits he filed. It is of particular significance that the second affidavit -- the one executed by the defendant -- was filed well after the government filed its amended opposition. It is likewise significant that nearly two months passed between the time the defendant filed his signed affidavit and the date on which I ruled on the motion. During that time, the defendant

made no further filing, despite having the full argument of the government before him, supported by affidavits of officers on the scene.

Moreover, on the central question of whether the firearm at issue in this case was discovered in plain view without Coyne's having to climb onto the hood of the Mercedes, the Samuels affidavit does nothing more than recite an out-of-court statement made by the defendant himself. Samuels asserts: "I spoke with Mr. Allen at the B-2 station. He told me that he saw the police climb onto the hood of the Mercedes before being taken from the scene." Affidavit of Balgene Samuels at ¶ 20. What the officers did to find the firearm was critical evidence. According to the Samuels affidavit itself, this information was known to the defendant at the time he filed the December 12, 2006 affidavit. Why that information was not contained in the affidavit is unexplained. Why no supplemental affidavit was filed between December 12, 2006 and February 8, 2007, likewise is unexplained.

The Samuels affidavit itself could have been presented to me before the motion to suppress was decided. In the brief offered in support of the motion for reconsideration, the defendant asserts that Samuels was unavailable as a witness "because of legitimate Fifth Amendment issues pertaining to his own arrest and prosecution" and because he was "unreachable until his phone service was 'reconnected' on February 13, 2007." Defendant's Memorandum in Support of Motion to Reconsider ("Defendant's Reconsideration Brief") at 4. These assertions are belied by the very papers by which they are conveyed to the court. First, as the defendant notes in his brief, "the case against Mr. Samuels remained active and pending until November 8, 2006," when Samuels pleaded guilty to state charges arising from the events giving rise to the charges against the defendant in this case. Defendant's Reconsideration Brief at 3, n.2,

4 and Ex. C.  Thus, it appears that Samuels Fifth Amendment concerns had been resolved by November 8, 2006, and that he *wa*s available as of the time the defendant filed his signed affidavit on December 12, 2006.  As for the Samuels's claim that he was unreachable until February 13, 2007, because of the absence of telephone service, I note from his affidavit that he resides at 33 Maywood Street in Roxbury; that his family has owned the home at that location since 1951; that he has lived there since 2001; and that the vehicles that were searched that evening in question were parked diagonally across the street from this location.  Affidavit of Balgene Samuels, ¶¶ 1-5.  It is not difficult for me then to infer from this information that the defendant knew where Samuels lived and could get in touch with him, despite any telephone difficulties Samuels might have had.

Finally, in the motion for reconsideration, the defendant points to the grand jury testimony of an ATF agent, Thomas Crowley, and notes that it is at odds with the affidavit filed by James Coyne with respect to the manner in which the firearm was discovered in the defendant's Mercedes.  The proffered evidence concerns whether Coyne climbed onto the hood of the Mercedes to look inside that vehicle.  To be sure, a reference to Coyne's having climbed onto the hood of the Mercedes was made by the defendant in his initial brief on the motion to suppress.  Defendant's Memorandum in Support of the Motion to Suppress at 3.  There was, however, no citation to a source of that information.  Accordingly, I limited my consideration of the motion to suppress to the factual matters set forth in the affidavits of the parties, saying: "In ruling on this motion, I have considered as evidence only the statements made in the affidavits submitted by the parties.  I have specifically disregarded any purported statement of fact in the parties' briefs which is not supported by an affidavit."  Order on Motion of the Defendant to Suppress Evidence at 1.

(Document #32)  I was unaware of any grand jury testimony of Agent Crowley.  (This is not to say, however, that my decision would have been different had I received Agent Crowley's testimony in timely fashion.  After all, he was not a percipient witness to the events in question.)  I was under no obligation to search the court's records for the source of the information provided by the defendant.  "Overburdened trial judges cannot be expected to be mind readers."  A party is required "to spell out [his] arguments squarely and distinctly rather than being allowed to defeat the system by seeding the record with mysterious references hoping to set the stage for an ambush should the ensuing ruling failed to suit."  *McCoy v. Massachusetts Institute of Technology*, 950 F.2d 13, 22 (1st Cir. 1991) (citation, quotation marks, and ellipses omitted)).  Thus, I was not required to rummage through the court's files looking for the evidence now advanced.  *Id*. at n. 7.  In other words, in the customary colorful language of Judge Selya, I was not required to "ferret out an evanescent needle from an outsized paper haystack."  *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988).

In the end, as the foregoing discussion demonstrates, the defendant presents nothing, on the present motion, that was unavailable to him at the time of the original motion to suppress.  Under these circumstances, he has not made a showing that the interests of justice require reconsideration of my ruling on that motion.  Therefore the motion for reconsideration is DENIED.

/s/Reginald C. Lindsay  
United States District Judge

DATED: May 10, 2007