UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 06-10170-MLW |
| | ) | |
| DARRELL D. ALLEN, | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER

WOLF, D.J.                                                          December 24, 2013

I.   OVERVIEW

Defendant Darrell D. Allen pleaded guilty to possession of
a firearm by a convicted felon. He was sentenced to 15 years in
prison. Allen has filed two motions under 28 U.S.C. §2255 to
vacate, set aside, or correct his sentence (the "First Motion"
and the "Second Motion," respectively). The First Motion
presents multiple grounds for relief. The Second Motion asserts
that Allen's sentence may have been affected by the misconduct
of chemist Annie Dookhan at the Hinton State Drug Laboratory.
The government has requested that the First Motion be dismissed
without an evidentiary hearing.

For the reasons described in this Memorandum, an
evidentiary hearing is not required in this case. The court is
construing the Second Motion as a meritorious motion to amend
the First Motion. The claims presented in the First Motion are
being denied on their merits. The claim presented by the Second

Motion concerning Dookhan is being denied without prejudice to the filing of another motion on similar grounds if at least four of Allen's state court convictions are vacated in the future.

## II. BACKGROUND

Except where otherwise noted, the following facts are taken from the First Circuit's decision in United States v. Allen, 573 F.3d 42, 44-50 (1st Cir. 2009) ("Allen III"). These facts are not disputed in any material respect.

On May 28, 2005, Allen was arrested by officers of the Boston Police Department. With Allen at the time was Balgene Samuels. Allen was arrested for drinking in public. Samuels was arrested for other offenses. Allen had in his possession the key to a Mercedes-Benz that was parked nearby. After Allen was arrested, Officer James Coyne, one of several officers on the scene, inspected the interior of the Mercedes by looking through the vehicle's windows with a flashlight. He identified the top of a chrome-colored gun in the vehicle. Coyne notified another officer, Sergeant Felipe Colon, that he had seen a gun. Colon opened the vehicle and confirmed that the object Coyne had seen was indeed a gun. The vehicle was impounded and inventoried. It was found to contain ammunition as well.

A grand jury returned a single-count indictment against Allen on June 7, 2006. The indictment charged Allen with

possession of a firearm by a convicted felon, in violation of 18 U.S.C. §922(g)(1).

On November 3, 2006, Allen moved to suppress the gun and the ammunition, as well as statements he had made to Officer Coyne on the night of the arrest. The motion was supported by a brief, unsigned affidavit by Allen. The government opposed the motion on November 16, 2006. Allen submitted a signed version of his affidavit on December 12, 2006.

On February 8, 2007, the presiding judge, Reginald C. Lindsay, denied the motion to suppress without holding an evidentiary hearing. The court determined that a hearing was not warranted because Allen had not established that material facts were in dispute. On the merits of the motion, the court found that the gun and ammunition should not be suppressed because they would inevitably have been discovered and because the gun was in plain view. The court also found that all of Allen's statements, with one exception conceded by the government, were made voluntarily and were preceded by proper Miranda warnings. See United States v. Allen, Cr. No. 06-10170-RCL, 2007 WL 465667 (D. Mass. Feb. 8, 2007) ("Allen I").

Three weeks later, Allen moved for reconsideration. The motion for reconsideration was accompanied by an affidavit by Samuels, the man who had been arrested with Allen. The motion also identified relevant grand jury testimony given by ATF Agent

Thomas Crowley. The court determined, however, that Allen's motion for reconsideration "present[ed] nothing . . . that was unavailable to him at the time of the original motion to suppress." United States v. Allen, Cr. No. 06-10170-RCL, 2007 WL 1412563, at *3 (D. Mass. May 10, 2007) ("Allen II"). More generally, the court found no "showing that the interests of justice require reconsideration." Id. The motion was, therefore, denied.

On June 7, 2007, Allen appeared in court and entered a conditional guilty plea pursuant to Federal Rule of Criminal Procedure 11(b). The plea agreement preserved Allen's right to appeal the decisions to deny Allen's motion to suppress and his motion for reconsideration. See May 21, 2007 Letter ¶1.

A sentencing hearing began on January 28, 2008. That hearing did not proceed to conclusion, because Allen had not previously reviewed the presentence report in detail. See Jan. 28, 2008 Hr'g Tr. 4. Sentencing was completed on March 5, 2008. The court found, as the parties had agreed, that Allen was an "Armed Career Criminal" under the Armed Career Criminal Act (the "ACCA"), codified at 18 U.S.C. §924(e). Consequently, the court imposed on Allen the mandatory minimum sentence of 15 years of imprisonment. The prison term was to be followed by 3 years of supervised release. See Mar. 5, 2008 Hr'g Tr. 10-11.

Allen appealed the district court's orders in Allen I and Allen II. On July 22, 2009, the First Circuit affirmed. The First Circuit found that the district court had not abused its discretion by denying the motion to suppress without a hearing, see Allen III, 573 F.3d at 50-52, or by declining to reconsider its decision, see id. at 53-54.

## III. THE FIRST MOTION

### A. Legal Standards

#### 1. *Denial Without an Evidentiary Hearing*

An evidentiary hearing is not necessary or appropriate for every §2255 motion. As the First Circuit has written:

> When a petition is brought under section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. See Mack v. United States, 635 F.2d 20, 26-27 (1st Cir. 1980); United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. [1978]), cert. denied, 439 U.S. 834 (1978). In determining whether the petitioner has carried the devoir of persuasion in this respect, the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets.
>
> We have distilled these principles into a rule that holds a hearing to be unnecessary "when a §2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974). In other words, a "§2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record,

> or are 'inherently incredible.'" Shraiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984).

United States v. McGill, 11 F.3d 223, 225-26 (1st Cir. 1993) (some citations omitted); see also United States v. Panitz, 907 F.2d 1267 (1st Cir. 1990); Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007).

2. *Ineffective Assistance of Counsel*

"The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel," but it "does not guarantee a defendant a letter-perfect defense or a successful defense." Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993). "Not every error amounts to ineffectiveness." Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002).

A person claiming ineffective assistance of counsel must establish: (1) that counsel's performance fell below an objective standard of reasonable effectiveness; and (2) that counsel's deficient performance was so prejudicial as to undermine confidence in the outcome of the trial. See Strickland v. Washington, 466 U.S. 668, 687-99 (1984); Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996).

"Judicial scrutiny of counsel's performance must be highly deferential," and "every effort [should] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Moreover, the court "must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010).

The "prejudice" element of an ineffective-assistance-of-counsel claim presents another high hurdle. To show prejudice, a claimant must affirmatively prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; Gonzalez-Soberal v. United States, 244 F.3d 273, 278 (1st Cir. 2001).

B.   Analysis

Allen contends that he received ineffective assistance from his attorney, Neil S. Tassel, Esq.,[1] with regard to his motion to suppress, his guilty plea, and his sentence. Allen also claims that his guilty plea was not knowing and voluntary. In addition, Allen revisits the Fourth Amendment claims addressed in Allen I, Allen II, and Allen III.

The government seeks summary dismissal. As explained below, the government's position is meritorious. The First Motion is,

---

[1]     Frank Fernandez, Esq. also represented Allen.

therefore, being denied. An evidentiary hearing is not necessary or appropriate because any facts in dispute are either immaterial or resolved decisively by the record.

1. *Ineffective Assistance of Counsel: The Motion to Suppress*

Allen's first allegation concerning his counsel's performance relates to the motion to suppress. Allen complains that Mr. Tassel failed to provide the court with an affidavit from Samuels until after the court had ruled on Allen's motion to suppress. See First Motion at 10, 16.

While the reasons for the delay in providing an affidavit from Samuels are not clear, the district court, in denying Allen's motion for reconsideration, stated that the evidence offered in support of reconsideration had been available to Allen before the court had ruled on the motion to suppress. See Allen II, 2007 WL 1412563, at *2-*3. On appeal, the First Circuit similarly stated that "[a]ll of the evidence in the Samuels affidavit was available to appellant at the time the original motion was filed." Allen III, 573 F.3d at 54. The First Circuit added that Allen's reliance on ATF Agent Crowley's grand jury testimony in his motion for reconsideration "was too little, too late." Id.

It is possible, therefore, that the first prong of the ineffective-assistance-of-counsel inquiry is satisfied. That is,

it may be "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. If the issue was material, an evidentiary hearing might have been necessary to determine whether "under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel, 350 U.S. at 101).

However, in order to succeed on his claim, Allen must also satisfy the second prong of the inquiry: "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; see also Gonzalez-Soberal, 244 F.3d at 277-78 ("Addressing the prejudice prong prior to evaluating counsel's conduct is a permissible approach and even endorsed where more efficient." (citing Strickland, 466 U.S. at 697)). This hurdle is insurmountable in the current case. As explained below, there is no reasonable probability that Allen's motion to suppress would have been allowed even if the evidence offered in support of reconsideration had been submitted earlier.

Allen's motion to suppress and motion for reconsideration argued that the gun and ammunition found in the Mercedes were seized pursuant to an unlawful warrantless search. The district court determined that the seized items were admissible for two reasons: first, the items would inevitably have been discovered, because the vehicle would properly have been impounded and

inventoried by the police; and second, the items were in plain view. See Allen I, 2007 WL 465667, at *1. The First Circuit focused on the plain-view doctrine, and found it applicable. See Allen III, 573 F.3d at 51-53. Allen's submissions in support of reconsideration sought to counter the plain-view theory by demonstrating that Officer Coyne had not "lawfully reached the position from which he could see the item in plain view." United States v. Antrim, 389 F.3d 276, 283 (1st Cir. 2004); Allen III, 573 F.3d at 51. Instead, Allen argued, Coyne had had to climb onto the hood of the Mercedes in order to examine its interior.

Allen offered the following support for this proposition. First, Samuels stated in his affidavit that Allen "told [Samuels] that he saw the police climb onto the hood of the Mercedes before being taken from the scene." Samuels Aff. ¶20. Second, Agent Crowley, testifying before the grand jury, answered "Yes" to the question, "[D]id Officer Coyne actually sit up on the, on the hood of the car and look in?" Crowley Grand Jury Test. 18-19.

Both of these pieces of evidence suffer from significant weaknesses. First, as the district court pointed out, "on the central question of whether the firearm . . . was discovered in plain view without Coyne's having to climb onto the hood of the Mercedes, the Samuels affidavit does nothing more than recite an out-of-court statement made by the defendant himself." Allen II,

2007 WL 1412563, at *2. Samuels's testimony was, therefore, secondhand. Moreover, Allen himself, the supposed source of Samuels's knowledge, did not assert that Officer Coyne climbed onto the hood in his own affidavits. Nor did he seek to fill this gap by way of a subsequent affidavit. See id. These failures diminish the credibility of the version of events Allen purportedly related to Samuels. See Allen III, 573 F.3d at 50 ("The [district] court found it curious that Allen did not include [the fact that Coyne climbed onto the hood] in his own affidavit, and that he had since failed to file a supplemental affidavit with this information"); Id. at 54 (drawing similar conclusions).

Agent Crowley, as the district court noted, "was not a percipient witness to the events in question." Allen II, 2007 WL 1412563, at *3. Indeed, when "[a]sked to describe his involvement in the case before the Grand Jury, Agent Crowley stated that he had 'reviewed all the reports relative to that arrest,' 'spoken to the arresting officers,' and done a background check on the firearm in question, but that he 'was not present that night.'" Allen III, 573 F.3d at 54 & n.6. Thus, Crowley, too, had only indirect information about the search conducted by Officer Coyne. The district court would have properly given the hearsay evidence of Samuels and Agent Crowley little weight.

Countering the statements of Samuels and Crowley was Officer Coyne's own sworn affidavit. Coyne stated as follows:

> I walked over to the Mercedes and looked inside it with my flashlight. I started from the rear, looking through the rear window and then the windows on the driver's side as I walked up the side of the car along the curb. When I got to the post at corner of the windshield, I leaned over the fender and the hood and shined my flashlight back into the area of the driver's side door and the compartment located in it. To do this, it was not necessary for me to walk or sit on the hood (both of my feet remained on the ground) and I did not do this. I may, however, [have] made some incidental contact with the fender and the windshield as I moved around.

Coyne Aff. ¶13.

Officer Coyne was the only witness who provided testimony about the search based on personal knowledge. Given the weakness of the evidence from Samuels and Crowley, and taking into account the fact that Allen failed to support his position in his own affidavits, there is no reasonable probability that the gun and ammunition would have been suppressed if the hearsay in Samuels's affidavit and in Crowley's testimony had been presented at an earlier date.[2]

There is another reason that the evidence presented belatedly would not have affected the decision to deny the

---

[2]      Indeed, the district court stated that although it had not been aware of Crowley's testimony when it made its initial decision, "[t]his is not to say . . . that [the court's] decision would have been different had [it] received Agent Crowley's testimony in timely fashion." Allen II, 2007 WL 1412563, at *3; see also Allen III, 573 F.3d at 54.

motion to suppress. As explained earlier, Allen was arrested before Officer Coyne saw the gun. As the district court explained, the gun and ammunition seized by the police would inevitably have been discovered subsequent to Allen's arrest because the Mercedes would properly have been impounded and inventoried. See Allen I, 2007 WL 465667, at *1; United States v. Sanchez, 612 F.3d 1, 7 (1st Cir. 2010) ("Courts have regularly upheld warrantless vehicle impoundments when police are acting not as investigators but as community caretakers."); Vega-Encarnacion v. Babilonia, 344 F.3d 37, 41 (1st Cir. 2003) ("where a driver is arrested and there is no one immediately on hand to take possession, the officials have a legitimate non-investigatory reason for impounding the car"). As a result, Allen's motion to suppress would not have been allowed even if Allen had successfully challenged the plain-view justification for the seizure of the gun and ammunition. Samuels's affidavit and Agent Crowley's grand jury testimony do not affect the conclusion that the gun and ammunition would have inevitably been discovered. For this reason, too, Allen was not prejudiced by the fact that their evidence was not presented to the court earlier.

In essence, there is no reasonable likelihood that Allen would have been obtained a different result if all of the evidence had been before the district court at the outset.

Allen's allegations are not "sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. This asserted ground for relief is, therefore, being denied.

2. *Ineffective Assistance of Counsel: Sentencing*

Allen also claims that his counsel was ineffective with regard to the sentencing process. According to Allen, Mr. Tassel "did nothing to challenge the unqualified prior convictions" taken into account in Allen's sentence. First Motion at 23; see also id. at 15, 24; Allen Aff. ¶d; Response to Gov't's Prelim. Req. for Dismissal ¶D. However, Allen does not identify any particular challenge or challenges that could have been made to any of his prior convictions. He, therefore, has failed to prove that his counsel's performance with regard to sentencing was deficient in any way.

3. *Adequacy of the Guilty Plea*

Next, Allen contends that his plea of guilty was not knowing and voluntary. Allen states that he wished to go to trial, but that his counsel was reluctant to cooperate. See First Motion at 13-14, 23-24; Allen Aff. ¶¶e-f; Response to Gov't's Prelim. Req. for Dismissal ¶A. Allen adds that his cousin, Tyrell Hulum, was prepared to testify that the gun found in the Mercedes was his. See First Motion at 13.[3] Ultimately,

---

[3] In a later submission, however, Allen states that his offense involved "a single firearm, which [Allen] only

Allen says, he "succumbed to his attorney's wishes . . . because [he] saw that his attorney was not going to represent him to the best of his ability at a trial." Id. at 14. In addition, Allen alleges that he was not informed that he would be subject to the ACCA, and, consequently, to a mandatory minimum sentence. See id. at 14, 23-24. Rather, Allen states, Allen's "counsel advised him that his sentence would not exceed 75 months." Id. at 14.

Allen's assertion that his plea was not knowing and voluntary is refuted by the record. The plea agreement signed by Allen states repeatedly that Allen would be classified as an Armed Career Criminal and that this classification subjected him to a mandatory minimum 15-year sentence. For example, paragraph 2 expressly states that: "The parties have agreed that Defendant qualifies for enhanced penalties as an Armed Career Criminal under 18 U.S.C. §924(e). Based on that determination, Defendant faces a maximum term of imprisonment of life and a mandatory minimum sentence of 15 years . . . ." See also id. ¶3(A) (similar); id. ¶4 (the terms of the agreement are "subject to the application of any mandatory minimum sentence"). Allen signed the agreement below an "Acknowledgement" paragraph that stated:

> [N]o additional promises or representations have been made to me . . . . I understand the crimes to which I

---

maintained for his personal protection." Mot. for Leave to Suppl. 24.

> have agreed to plead guilty, the maximum penalties for those offenses and Sentencing Guideline penalties potentially applicable to them. I am satisfied with the legal representation provided to me by my attorney. We have had sufficient time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Agreement is in my best interest.

Id. at 12. Allen had a GED and, therefore, should have been able to read and understand these representations. See Gov't's Prelim. Req. Summ. Dismissal 4 & n.3 (citing Presentence Report ¶86) (defendant received a GED, attended some college, and studied real estate).

In court, before Judge Lindsay accepted his guilty plea, Allen was questioned under oath. Among other things, the colloquy included the following:

> THE COURT: Are you fully satisfied with the representation, advice, and counsel Mr. Fernandez and Mr. Tassel have given you generally in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you satisfied in particular with the advice, counsel, and representation they've provided for you regarding whether you should plead guilty to the offense charged against you in this case?
>
> THE DEFENDANT: Yes.
>
> * * * *
>
> THE COURT: Did you read carefully the plea agreement?
>
> THE DEFENDANT: Yes.

> THE COURT: Did you discuss it thoroughly with your lawyers?
>
> THE DEFENDANT: Yes.
>
> * * * *
>
> THE COURT: You signed this agreement, did you not?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You did it voluntarily?
>
> THE DEFENDANT: Yes.
>
> * * * *
>
> THE COURT: [T]here's a minimum -- there's a statutory minimum here . . . . You face a minimum penalty, Mr. Allen, of 15 years, minimum term of incarceration of 15 years, a maximum term of life . . . .
>
> Do you understand the possible consequences of pleading guilty to this offense?
>
> THE DEFENDANT: Yes.

June 7, 2007 Hr'g Tr. 8, 10, 12-13.

The record, therefore, leaves no question that Allen entered his guilty plea both voluntarily and with knowledge of all relevant facts, including the fact that he would be subject to a mandatory minimum sentence of 15 years in prison. The claim that Allen's plea was not entered knowingly and voluntarily is, therefore, being denied as well.

Allen also links his decision to plead guilty to an ineffective assistance of counsel claim, arguing that counsel failed to tell him he would be sentenced as an Armed Career Criminal. See First Motion at 14. This contention is without merit. As this information is in the plea agreement that Allen

admitted discussing with his lawyer, the contention is "inherently incredible." Shraiar, 736 F.2d at 818. However, even if his counsel did not discuss the Armed Career Criminal issue with him, Allen was not prejudiced because the essential information was clearly communicated to him by the judge at the Rule 11 hearing. See Strickland, 466 U.S. at 694 (explaining the prejudice requirement).

Similarly, in a Response brief, Allen concedes that the plea agreement specified the mandatory sentence he was to face, but claims that "Mr. Tassel told [Allen] that none of those things mattered because he would receive a 60 to 75 month sentence regardless of what papers or agreements he signed." Response to Gov't's Prelim. Req. for Dismissal ¶B; see also id. ¶C. This contention is being disregarded as inherently incredible. It is inconsistent with other statements made by Allen, even in his current submissions. Allen states, for example, that Mr. Tassel "said the government was aware that they could use [the ACCA], but most likely will not," First Motion at 14, and that "Mr. Tassel said he was concerned about the armed career criminal status," Allen Aff. ¶d.

In this case, it is clear that Allen was informed in his plea agreement and by the judge, at least, that his guilty plea would subject him to a 15-year mandatory minimum sentence, and there is no credible evidence that his attorney told him

anything different. The Guideline range for Allen's sentence was 180 months to 210 months in prison. See Judgment, Statement of Reasons ¶III. He could have been sentenced to more than 15 years in prison if he went to trial and was convicted. In these circumstances, it was within the range of reason for his counsel to advise him to plead guilty in return for a recommendation of only 15 years. See United States v. Colon-Torres, 382 F.3d 76, 86 (1st Cir. 2004); Hill v. Lockhart, 474 U.S. 52, 56-57 (1985); McMann v. Richardson, 397 U.S. 759, 771 (1970).

4. *Fourth Amendment Claims Revisited*

The final argument Allen makes in his First Motion is that the gun and ammunition that Allen was charged with possessing were seized in violation of the Fourth Amendment. See First Motion at 18-19. In support of this claim, Allen places special emphasis on Arizona v. Gant, 556 U.S. 332 (2009).

This argument revisits the same issue previously decided by the district court and by the First Circuit in Allen I, Allen II, and Allen III. These decisions established conclusively that the gun and ammunition were not seized in violation of the Fourth Amendment. As this issue was decided on direct appeal, it cannot now be relitigated in this §2255 proceeding. See Singleton v. United States, 26 F.3d 233, 240 (1st Cir. 1994); United States v. Butt, 731 F.2d 75, 76 n.1 (1st Cir. 1984). Gant, on which Allen relies, was decided before the First

Circuit decided Allen III, and was presumably taken into account by that decision. Gant is also inapposite, because it addresses a category of cases different from Allen's case, namely cases in which a search was conducted incident to a lawful arrest. See 556 U.S. at 335, 338. The Fourth Amendment claims asserted in Allen's First Motion are, therefore, being denied as well.

Recently, Allen filed a motion for leave to supplement his First Motion. He argued that four recent Supreme Court decisions establish that he is entitled to relief. None of these decisions alters the conclusion that Allen's First Motion should be denied. Alleyne v. United States, 133 S. Ct. 2151 (2013), holds that any fact that increases a mandatory minimum sentence is an "element" to be decided by the jury. This holding does not invalidate all plea bargains on the grounds that they involve determinations not made by a jury. In addition, the Supreme Court explicitly declined to extend Alleyne to "the fact of a prior conviction." 133 S. Ct. at 2160 n.1; see also United States v. Carrigan, 724 F.3d 39, 51 n.4 (1st Cir. 2013). Descamps v. United States, 133 S. Ct. 2276 (2013), holds that the "modified categorical approach" to sentencing under the ACCA may not be applied to a crime with an indivisible set of elements. Allen does not contend, however, that this approach was improperly applied in his case. Missouri v. Frye, 132 S. Ct. 1399 (2012), holds that defense counsel has a duty to

communicate plea-bargain offers to the defendant. The record in this case demonstrates that the plea-bargain offer and the information pertinent to it were explained to Allen in detail. Finally, in Lafler v. Cooper, 132 S. Ct. 1376 (2012), the Supreme Court granted relief to a petitioner who was prejudiced by his counsel's deficient performance in advising him to reject a plea offer and to go to trial. Allen has not demonstrated any similarly prejudicial performance by his counsel.

## IV. THE SECOND MOTION

### A. Additional Background

The Second Motion was filed on August 29, 2013. This motion argues that the convictions that made Allen an Armed Career Criminal may be affected by the misconduct of chemist Annie Dookhan at the Hinton State Drug Laboratory. At Allen's request, and pursuant to the District Court's General Order 12-03 Concerning Hinton Drug Laboratory Cases, counsel was appointed to prepare this motion for Allen.

Allen's sentence, and specifically his classification as an Armed Career Criminal, was founded on six prior convictions. Allen asserts that five of these convictions were drug-related. He has obtained certification that in one of these cases, testing was performed at the Hinton Laboratory. Allen has not obtained similar certifications concerning the other cases, and

he awaits the conclusion of the investigation that is being conducted by the Massachusetts Inspector General (the "Inspector General"). Included in the Second Motion is a request for a stay of the proceedings concerning the Second Motion pending the release of the Inspector General's report.

On September 12, 2013, the parties filed a Joint Report in accordance with General Order 12-03 and the June 28, 2013 Order in the instant case. Allen submits that the outcome of his Second Motion is dependent on the Inspector General's findings, and that the proceedings should be stayed until these findings are released. The government points out that a person may be classified as an Armed Career Criminal on the basis of three prior convictions. Because Allen had six such prior convictions, the government maintains that the court should not grant relief unless Allen obtains orders from state courts vacating four of his predicate convictions. The government has not stated its position as to whether a stay is appropriate.

B. Jurisdiction

"Second and successive" §2255 motions are subject to the constraints imposed by 28 U.S.C. §§2255(h), 2244. More specifically, a district court cannot entertain such a motion unless it is first certified by a panel of the appropriate court of appeals. See 28 U.S.C. §§2255(h). Recognizing that Allen's First Motion was still pending when the Second Motion was filed,

the government has stated that it "will not seek dismissal of the [Second Motion] on the grounds that it is a 'second and successive' petition." Response to Def.'s Mot. to Suppl. 3 n.3. However, the restrictions on second and successive §2255 motions are jurisdictional, see Trenkler v. United States, 536 F.3d 85, 96 (1st Cir. 2008), and the court has an independent obligation to ensure its jurisdiction, see FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990).

Because the Second Motion raises claims that could not have been raised at an earlier date, meaning before Dookhan's misconduct was uncovered, it may be that this motion should not be classified as a "second [or] successive" motion. See United States v. Barrett, 178 F.3d 34, 45 (1st Cir. 1999) (stating that a §2255 motion is "second or successive," among other circumstances, if it "raises a claim that could have been properly raised and decided in a previous §2255 petition"); Pratt v. United States, 129 F.3d 54, 62-63 (1st Cir. 1997) (similar). In any event, "when a §2255 motion is filed before adjudication of an initial §2255 motion is complete, the district court should construe the second §2255 motion as a motion to amend the pending §2255 motion." 3 Charles Allen Wright et al., Federal Practice & Procedure §637 (4th ed. 2010); see also United States v. Ciampi, 419 F.3d 20, 23 (1st Cir. 2005) (amendments to §2255 motions are governed by Federal Rule

of Civil Procedure 15). Therefore, the court is construing the Second Motion as a meritorious motion to amend the First Motion. Thus, jurisdiction exists.

C. Analysis

None of Allen's predicate convictions have, to date, been vacated. Therefore, as the parties recognize, the Second Motion does not now provide a basis for possibly granting Allen a reduced sentence. See D. Mass. General Order 12-03 ¶4 (providing instructions for cases in which "the Alleged Lab Misconduct solely affects the evidence underlying a predicate conviction . . . and the defendant, exercising due diligence, has obtained a ruling vacating a Relevant Prior Conviction").

The parties also agree that the grounds described in the Second Motion, Dookhan's misconduct, could potentially provide a proper foundation for a motion to vacate, set aside, or correct Allen's sentence in the future. Accordingly, the claim asserted in the Second Motion is being denied without prejudice to the filing of another motion on the same grounds if and when such a motion becomes ripe for consideration. Because this claim is not being adjudicated on its merits, a future motion on the same grounds would not be a "second or successive" §2255 motion and, therefore, would not be subject to the strictures of 28 U.S.C. §§2244, 2255(h). See Barrett, 178 F.3d at 43 ("'a numerically second petition is not "second or successive" if . . . the

earlier petition terminated without a judgment on the merits'" (quoting Pratt, 129 F.3d at 60)).

The court is not now staying these proceedings because such a stay would be indefinite and likely protracted. It appears that Allen cannot take further action to vacate his convictions until the findings of the Inspector General are released. These findings may or may not provide a basis for Allen to challenge one or more of his prior convictions. Four such challenges would have to succeed to alter Allen's status as an Armed Career Criminal. In view of the foregoing, a stay is not most appropriate.[4]

V. CERTIFICATE OF APPEALABILITY

The court is required to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing §2255 Proceedings, Rule 11(a). A certificate of appealability ("COA") is warranted if "'reasonable jurists would find the district court's assessment

[4] Section 2255 motions are subject to a one-year period of limitation. See §2255(f). This period of limitations begins on the latest of several alternative dates, including "the date on which the impediment to making a motion created by governmental action . . . is removed," §2255(f)(2), and "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence," §2255(f)(4). In light of this provision, as long as Allen pursues his case diligently, the court's decision not to stay these proceedings is unlikely to cause the period of limitations to run.

of the constitutional claims debatable or wrong.'" Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A claim can be debatable "even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Id. However, the "issuance of a COA must not be pro forma or a matter of course," because "Congress [has] confirmed the necessity and the requirement of differential treatment for those appeals deserving of attention from those that plainly do not." Id. at 337.

The claims asserted in the First Motion are all either facially inadequate or contradicted conclusively by the record. As Allen concedes, the claim asserted in the Second Motion is also not now meritorious. Accordingly, the court does not find that reasonable jurists could find its assessment of Allen's claims debatable or wrong. See id. at 338. A COA is, therefore, being denied as to all claims. Allen may seek a COA from the court of appeals. See Rules Governing §2255 Proceedings, Rule 11(a).

## VI. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Allen's First Motion (Docket No. 76) is DENIED.

2.    Allen's  Second  Motion  (Docket  No.  89)  is  deemed  a meritorious motion to amend the First Motion. The claim asserted in the Second Motion is DENIED without prejudice to the filing of another motion on the same grounds if future events justify resubmission.

3.    A Certificate of Appealability is DENIED as to all claims.

UNITED STATES DISTRICT JUDGE